Case number 171793, Edward Ruemenapp v. Oscoda Township MI et al. Argument not to exceed 15 minutes per sign. Mr. Cabot, you may proceed for the appellate. Good morning, Your Honor. Sean Cabot on behalf of the appellant. May it please the Court, I would request three minutes for rebuttal. I'd also like to thank this Court for its willingness to try to accommodate my trial schedule that was supposed to be occurring this week. I'm glad to say that it's in the process of resolving and that case won't be coming to the Sixth Circuit for resolution. Your Honor, this case deals with the District Court's granting of summary disposition, summary judgment, which was inappropriate. And I think what's very clear from the offset of the Court's opinion was that the District Court failed to view the facts in a light most favorable to the non-moving party. In this case, Mr. Ruemenapp, which the case law is very clear indicates that the District Court was supposed to do. The Court's opinion, in fact, opens not with the facts from the perspective of the non-moving party, but the facts from the perspective of the officer or the moving party. And actually, the Court's opinion goes through a number of pages accounting for the officer's view of what happened. And very much gives very short shrift to the testimony and the evidence presented by the plaintiff in the case. And in fact, we have, as in most of these police cases, there are two competing views of the facts, the officers and the plaintiff. In this case, we also had an eyewitness account, and that eyewitness submitted a declaration, which was part of the record, which the District Court pretty much just ignored. A couple lines in the opinion mentioned it. But that evidence, that declaration, was crucial because it added to the account and the veracity of the account as presented by the plaintiff in that case. And the opinion by the District Court, I think, is abundantly clear that it really went afoul of the general rule of taking the facts in a light most favorable to the non-moving party. Well, the eyewitness account did not see the crucial event, right? I mean, the question is whether your client was thrown against the wall. Well, I think that is part of it. But the other crucial part, Your Honor, is that there was a question of, and the District Court made a lot of this pointing of the finger. And there was a lot in the opinion and a lot of discussion about, from the officer's viewpoint of my client allegedly pointing his finger directly in the face of the officer. My client vehemently denies that on numerous parts. Okay, I agree with you. We have to assume that he didn't do that. And the declaration says he didn't do that. And I think that's important because the... White's question, I think, was more directed toward the incident of his being pushed against the wall. And my recollection is that while he may not observe that, he observed the wall after the fact. And he observed the plaintiff after the fact. Correct. Is that right? Right. If I may, the declaration was actually attached as Exhibit G to our response brief. And it's... Actually, I'm sorry, it's Exhibit D. Is this the response to the summary judgment? It is. It's page ID 420 and 421 is where the meat of it is. And I think there's a number of things crucial in that. First of all, it talks about he didn't hear Mr. Rumenap yelling. There's a number of occasions in the court's opinion that says, well... And what the district court did was setting up for justifying the actions of the officers. He says, well, there's all this yelling. The declaration denies that. He says, I did not hear any yelling or talking coming from outside. He then says, the declaration I saw him point in the direction of a woman that was standing in the parking lot. Nothing indicated he saw my client pointing his finger in the face of any officer. Then he saw the police officer come standing behind my client, grab Mr. Rumenap, and push him into the side of the building. After he comes away from the building, he sees a blood spot. He also sees, paragraph 10 of that declaration, one of the officers holding Mr. Rumenap against the side of the building, twisting his arms, trying to put him in handcuffs. He also hears a muffled, I'm not resisting by Rumenap, where the officers say, stop resisting. And he says in paragraph 12, I never saw Mr. Rumenap being aggressive in any way. We have to start, the starting point is that he pled guilty to obstructing. So I guess what we do is we take the least aggressive action, the least aggressive prong of that statute. Is that what you want us to do? No, I don't think you start with your honors referring to that deferred prosecution agreement. You don't start with that point. You start with the gram factors. And that's when you're dealing with the excessive force under the Fourth Amendment context, that's always the launch pad from where these cases start. And there's the three factors. One is the severity of the crime. Now, in this case, we're dealing with, at best, some type of landlord-tenant dispute. Mr. Rumenap claims the tenant abandoned a room. The police officers take the position it's an eviction. Regardless of that, the district court acknowledges that at any level, no matter how you cut it, this isn't a severe crime, if there was any crime at all. But I think also what's imperative and what the district court failed to do in this case, in Wysong v. City of Heath, it mentioned at 260 Appendix 848, the test is fact-specific and not mechanical. And whether the officers' actions were objectively reasonable has to be considered against the totality of the circumstances presented. And so it's important that you start with not this deferred prosecution agreement, but the facts in the case. The facts in the case starts off with a non-violent, non-severe crime, if this can even be considered a crime. So then we go to the second prong, whether there was an immediate danger to the police or bystanders. There is no evidence, well there's obviously conflicting evidence in the record, whether or not Mr. Rumenap posed a threat to the officers. The district court began its analysis and said that Mr. Rumenap was belligerent because he, quote, refused to allow the officers access to Ms. Reeker's apartment, used an obscenity, and gestured menacingly. Now this is critical because the evidence in the record does not support, other than the officer's testimony, Mr. Rumenap denied swearing at the officers. I think one of the... It's been going on for quite a while, and I don't believe you made any effort to answer the question that Judge White asked. I mean, what do you do about, I mean, whether you start there or not, what do you do about the deferred prosecution agreement? I think she was right in suggesting the analysis. I mean, what part of this could he have done and still be guilty of the offense at issue? Well, I think it's a non-issue. What's obstructing? Well, I think it's a non-issue, and the court acknowledged that because there wasn't a false arrest claim that went to summary judgment in this case. It really is a non-issue, and the court pretty much, this court acknowledges that. The answer would be fairly. I'm a little baffled by this because I assume that obstruction refers to nonviolent behavior, and I assume it probably refers to a range of behaviors, and that it is possible that that agreement could coexist in harmony with your client's version of what happened. I think that's what Judge White was trying to find out. If it can't, you just need to face that fact and work around it. I mean, you would still probably have a fact question about some of the things you've mentioned. It wouldn't undermine your argument in any way. Okay. So what's the hang-up about answering that question? Well, I'm sorry if you think there's a hang-up. I just don't think that the deferred prosecution agreement has any bearing on the facts of this case or what happens with the case because— Well, you said someone argued that it was determinative as to your client with respect to certain behavior. What would the certain behavior have been? Well, and that's the problem. The deferred prosecution agreement, it's page ID 311, and it references MCL 750.81D, which does not define obstruct or oppose. In the actual paragraph 3, it talks about defendant admits that he did obstruct or oppose Greg Alexander. Could just be not agreeing to do what the officer asked. Why wouldn't that be the answer most favorable to you? And that is one of the possibilities because oppose— You need to answer the question. Right. But to oppose or obstruct could mean the fact that when they said, we're going to go in, he says, no, I don't want you to go in the apartment. But that's the point, counsel. I mean, the answer should be you can oppose without justifying that kind of force. But we do know that he pled guilty to opposing at a minimum. And so did they have a right to arrest him? We didn't oppose the arrest, and that wasn't part of the summary judgment. But all you have to do is say yes. Did they have a right to arrest him? You've made me press you for several seconds. I've had an unanswered question. It's not even harmful to you. All I can say is that under the statute, which is very broad, it is arguable that they had a reason to arrest him. But that's not—okay. Are you—if he pled—if he entered a no-load to that, I don't see how you can now maintain that he did not commit that offense. Now, you can argue about how he did it and what the facts showed, but I don't—you're going to have to explain to me how you can take the position that he did not obstruct. Well, he signed the agreement. He agreed to it that he did obstruct or oppose. But to say that it was some type of physical opposition or a physical obstruction, that's not in the deferred plea agreement. And certainly whatever opposition he made, which arguably could have been, I don't want you to go into the room, doesn't necessitate the force that was used. Okay, so that's your argument. Yes, he may have opposed under the statute, but that doesn't mean that they had a right to use that force. Correct. And I see my time is up. Any questions? Good morning, Your Honor. Gus Morris on behalf of the defendant. May it please the Court. Judge White, I think you're correct. You do start with the fact that this gentleman was convicted of a crime arising out of this event. This is different than the case where the officers are, say, executing an arrest warrant and there's some physical altercation. I'm sorry. Do you disagree that this offense can be committed with an act that is surely far less than what the officers claim Mr. Rumenap did? Well, yes, I suppose that's the case. I mean, it could be violated by refusing to allow them to enter the room, correct? No. Two things, and I'll tell you why. I'm fairly emphatic in my no, and that's for a reason. If Your Honors look at my brief, we've referenced a Michigan Supreme Court case that addresses the statute resisting, opposing, obstructing the Arno statute, and it's People v. Vasquez. It's on page 12 of my brief. That case specifically says that that statute requires some element of physical resistance. So that's why I can say emphatically no to your question. But maybe more importantly, if you look at the plaintiff's testimony in the deposition, he describes an act of physical resistance that he did, which is confirmed by the officer. If you look at the plaintiff's debt page 86, he specifically says that when the officer tried to reach for him to place him under arrest, he, quote, turned away from the officer. That is an act of physical resistance, which is, by the way, consistent with the officer's testimony. That would not, however, justify pushing somebody against a wall with enough force to bloody their face, correct? Again, I disagree with that because, you know, you can have an act of excessive force where there's no injury, and you can have an act of reasonable force under the circumstances where there is an injury. So the injury to me is not as significant as what is the action that's just ‑‑ I agree with you that that is certainly not determinative. I mean, but it is some evidence of the force that was used to accomplish the pushing against the wall. Well, possibly. I don't want to get into that argument because my point is there isn't anything in this record that the court can say, here is something, if the jury believes it, would be an act of excessive force. Well, there is the officer's testimony that all he did in pushing him against the wall was put his hand in the back. Yes. As opposed to the claim that somebody pushed his head against the thing so forcefully that it caused bleeding in his face. You're going to have to educate me on that one because there's nowhere in the record that it's said that somebody pushed his face or head into the wall. It's not in the record. He says he doesn't ‑‑ It may not ‑‑ there may be no one who says that directly, but it is a ‑‑ the importance of the injury coupled with the plaintiff's own testimony permits an inference that the officer's ‑‑ arguably permits an inference that the officer's testimony was untrue. And in any ‑‑ at minimum it creates a fact question about what happened. You lost me on that one. I don't ‑‑ Well, I'm not sure why. I don't understand that. Did the plaintiff sustain a concussion? His medical records say he had concussion‑like symptoms. There is no objective medical testing in the record that he actually sustained a concussion. He didn't see the doctor until five days after the incident, and if you listen to him talking to the police in the police car, he certainly didn't even have any problems of a cognitive nature on that day. He's begging for a restart if you listen to the video. So I think the answer to that question is he complained of concussion‑like symptoms, but that could be as a result of any number of things. Don't forget this gentleman was charged with a felony, and he was facing a possible loss of work, and that certainly could impair his well‑being and cause arguably concussion‑like symptoms because he's so upset about the fact he might lose his job. The point is it doesn't matter one way or the other to me because I think that there has to be some evidence in the record that somebody committed an act of excessive force. I don't think it's a reasonable inference to say because he might have had a concussion there must have been excessive force simply because you're reading things into the record that aren't there. There has to be some evidence of that. That's not a reasonable inference because it could go either way. I'm pretty fixed at this point in my views about what evidence permits an inference and what doesn't. I'm pretty sure that my view of it is just as good as yours, so don't tell us too much along that line. All right. Well, I apologize if I'm telling you too much. I guess my point is you're just guessing when you say he might have had a concussion, therefore there might have been excessive force. That's guessing. I think you need evidence. What was the charge that you think might have stressed him so much that he would develop symptoms, can't sleep, other stuff? What did they threaten to charge him with? A felony. Resisting and obstructing. Is it a felony? It is in Michigan. It's a four-year felony, yes. Wow. I didn't write the law. I just tried to follow it. In his testimony, the officer decided to do that upon learning that if he was charged with a felony, he might lose his job. I'm sorry, I didn't understand your question. The record contains evidence that the officer's decision to charge him with a felony could in fact have been motivated by the plaintiffs telling the officer that if he was charged with a felony, he might well lose his job, and then the officer said something, this is not a direct quote, like, well, I'll make sure you're charged with a felony then. That's in the record, isn't it? Okay. I don't recall reading that last night, but for the sake of discussion. Well, maybe it has to do with another case, and I dreamed it. I can see that it's in the record. If you tell me it is, I have every reason to believe you. But what I would say is that ultimately the officers arrest him. It is the prosecutor's decision to determine what he's charged with. They have no say in that. Well, it depends on what they tell the prosecutor, certainly. I mean, here he pointed, according to the officers, pointed a finger in their face. Yes. You think that's worth four years in the penitentiary on a felony charge? No, that's why I'm not a prosecutor. I could never be a prosecutor. I would never have charged him with that. But I have to live with that. I guess what I'm saying to you, this panel here, is that really I think the strength of my defense is the qualified immunity issue, which was addressed by Judge Ludington below. Under these circumstances where you have an admitted act of resistance, I mean, do you watch cops? Every incident would be a lawsuit like this. Officers are trained when people pull away so they don't reach for a gun. They don't know what's in these people's pockets. Let's get control of the situation as quickly as possible so nobody gets injured. And one of the techniques, I mean, I go to these schools where they teach this stuff, is get somebody in the prone position up against the wall. They're off balance. They can't hurt you. They can't hurt themselves. And then you get them cuffed up real quickly, which is what happened here. They pushed him up against the wall and they got him cuffed. It could have been a lot worse. They did what they were trained to do. Is there a clearly established law in this circuit that says pushing somebody against the wall who's resisting, he's resisting, he pulled away, to get control of him and get him cuffed up is clearly established as a Fourth Amendment violation? It's not there. This is that type of force that the Supreme Court has repeatedly over the last decade, starting with Saucier v. Katz and that line of cases, said, hey, wait a minute, lower courts, you've got to take a step back. You've got to have some clearly established, particularized law or case law out there that says this act under these circumstances amounts to excessive force. I don't write these. The argument of the plaintiff is that when you say these circumstances, the district judge didn't take the facts that he offered into, didn't depend on those, but instead depended on the ones that the officers offered. I don't read that from the opinion. He lays out both sides of the facts and he says. Excuse me. You disagree with it, but that's the argument, is it not? That's his argument. Yes, it is. But it doesn't conform with what Judge Ludington did. He lays out everybody's testimony. And then when he does his analysis, he takes into account what the plaintiff said. And what the plaintiff says is, I don't know what they did. I don't remember. They grabbed from me. I pulled away. I started to say, what are, probably, what are the charges? And that's the last thing he remembers. That's what Judge Ludington took into account. I understand your argument. And then the eyewitness just says they pushed him against the wall, right? Which is consistent with what they said they did, yes. So what are we to infer from the fact that he lost his memory and later had concussion-like symptoms? I mean, people don't usually lose their memory. So either he's lying or something happened that caused him to lose his memory at that point. Right. I think the answer to your question, Judge White, is that in the course of struggling with the officers, a fact that he doesn't remember but the officers do, he was moving his head around. He sustained an abrasion on his cheek. He maybe did hit his head against the wall during this altercation. I guess my point is there's no evidence. I mean, it would be a different case, wouldn't it, if there was testimony from Mr. Merritt or the plaintiff. I was standing there. I was compliant. Somebody put their hand on the back of my head and shoved my face into the wall. Now you would have a case that I would argue gets past qualified immunity because that's excessive force. It really doesn't matter if the hand is in his back or the hand is in the back of his head. If he's pushed hard enough, he's going to hurt his face, right? Yes, but being pushed hard enough does not make it excessive force. That's my argument. They're trying to get control. This isn't a small man. This is a fairly large man. The cops are my size, and they want to get the gentleman under control as quickly as possible. Listen to some of these quotes from the cases. Justice Thomas, in the new case, just January 28, 2018, District of Columbia v. Wesby, 583 U.S. There's no page site yet. At the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. Can you really say that every reasonable police officer out there would believe that shoving this man into the wall to get him under control was unlawful? It's just not the case. Existing precedent must put the question of whether or not the alleged act was unconstitutional beyond debate. The fact that we're debating it here today suggests that qualified immunity should apply. Saussure talks about the hazy border between excessive and non-excessive force and how officers have to make split-second judgments under these circumstances to get the situation under control. You can't have 20-20 vision of hindsight as a court to say, well, they didn't have to push him into the wall quite so hard. That's the whole point of qualified immunity. You can't substitute your judgment for the officer's judgment on the scene. We could carry this out a long way. I would be willing to say that what they did in response to having, even if I accept their testimony and say that he was poking his finger in their face, that that really doesn't give them justification for trying to arrest him or handcuff him or anything else. At least in somebody's judgment, they were overreacting to this. Were they irritated that he wouldn't unlock the door for them? I don't know. This is the entire police force of Oscoda, Michigan out there. Those two officers. Yeah, but if you'll remember the record, somebody said, why didn't you call for backup? And they said, we were it. There wasn't any backup. It's a one-man car. They travel together. I mean, I don't understand what that has to do with it. It doesn't have anything to do with it. What it has to do with is their overreaction to him putting a finger in their face. Except he committed a crime in their presence. At most disorderly conduct. At most. He pulled away. There's an act of physical resistance in the record. And they pushed him up against the wall to get control of him. It's as simple as that. It happens every day. Police forces all over the world. You have your argument. Thank you. Then I won't go any further. I appreciate your time. Dealing with Mr. Morris's qualified immunity argument, I'll just make a couple points. This incident happened on February 28, 2015. I would direct the court to Miller v. Sanilac County, which was 606 F3rd 240 decided June 4, 2010. In that case, it was actually a case that was mine that I argued in front of the court on that one. It talked about the arrestee being slammed into his vehicle. And in that case, interestingly enough, there was no injury. And at pages 253 and 254 of that opinion, it says, Miller's claim of excessive force admittedly comes close to the scintilla of evidence of excessive force this court has previously found to be insufficient to survive summary judgment. However, we believe that a jury could reasonably find that slamming an arrestee into a vehicle constitutes excessive force when the offense is nonviolent, the arrestee posed no immediate safety threat, and the arrestee had not attempted to escape and was not actively resisting. That's a 2010 decision in place. Which one is that? That's Miller v. Sanilac County. It's 606 F3rd 240. We mentioned it in our brief. It was decided June 4, 2010. So that case was the law at the time of this incident, i.e., qualified immunity does not protect them. Counsel, it would help me if you would answer directly because I am struggling with this. You have somebody who is resisting in some fashion, and they want to get control of him. And they put him against the wall. Now, your client is unable to tell us anything about how that happened, right? He testifies that he remembers his face being slammed against the wall. After that, he doesn't recall until he hears some voices. But here's the interesting thing. It doesn't even mention in the officer's report about him allegedly. Now, this is their testimony, which is taken after my client's testimony, which I think is important. They say he moves his face left and right. We supplied the court with that photograph. That injury is not consistent with somebody taking their face and rubbing it left and right. It's consistent with somebody being forcefully pushed against a rough exterior wall with enough force that he loses consciousness. And that wasn't just Mr. Rumenap's conclusion. It was supported by medical evidence as well, which was part of their record. You're saying your client said that he recalls having his head slammed against the wall. Those are his words? I don't know if that was his words, but he does remember the contact with his face and the wall. Okay, but someone who's being pushed against a wall to get their hands cuffed, their face could very innocently come into contact with the wall. I'm trying to find out what you're relying on for us to be able to infer that he was slammed against the wall. Those are reasonable inferences that are required to be decided by the jury and not the district court. So you're relying on the injury and not any testimony? Well, the injury and the fact that the two defendants admit they put him against the wall. And you also have the declaration of Mr. Merritt and the testimony of the plant that says he wasn't physically resisting. And those are all factors that a jury has to determine. At the end of the day, maybe they'll believe Mr. Ruminant, maybe they'll believe the officers. But that's the essence of why it has to go to a jury. Thank you, Your Honors.